## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI

|  |  |  |
|---|---|---|
| **KELLY DIANNE HORWITZ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:18-CV-0054-ERW** |
| | ) | |
| **ANDREW M. SAUL,** | ) | |
| | ) | |
| **Commissioner of Social Security,**[1] | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the application of Kelly Horwitz ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II, 42 U.S.C. §§ 401, *et seq.* Plaintiff filed a brief in support of the Complaint (ECF 13) and Defendant filed a brief in support of the Answer (ECF 18).

### I. PROCEDURAL HISTORY

Plaintiff filed her application for DIB under Title II of the Social Security Act on November 10, 2014 (Tr. 159-160). Plaintiff claims she became disabled on May 7, 2014, because of fibromyalgia, chronic fatigue, cervical herniated disc, cervical stenosis and cervical radiculopathy. Plaintiff was initially denied relief on January 6, 2015, and on February 27, 2015, she filed a Request for Hearing before an Administrative Law Judge ("ALJ") (Tr. 111-115, 118-119). After a hearing, by a decision dated January 4, 2017, the ALJ found Plaintiff was not

---

[1] Andrew M. Saul is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul should be substituted for Acting Commissioner Nancy A. Berryhill as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

disabled (Tr. 19-27). Plaintiff filed a Request for Review of Hearing Decision on March 3, 2017 (Tr. 156). On November 17, 2017, the Appeals Council denied Plaintiff's request for review (Tr. 1-4). As such, the ALJ's decision stands as the final decision of the Commissioner. Plaintiff appealed to the United States District Court for the Eastern District of Missouri on May 3, 2018 (ECF 1).

In this action for judicial review, Plaintiff claims: 1) the ALJ erred in determining Plaintiff's RFC as it was not supported by any medical opinion; 2) the ALJ erred by not addressing lay evidence from Plaintiff's former supervisor; 3) the ALJ erred in evaluating Plaintiff's subjective claims of pain; and 4) the ALJ erred in accounting for Plaintiff's fatigue and fibromyalgia.

For the reasons that follow, the ALJ did not err in his determination.

## II.     EVIDENTIARY HEARING BEFORE THE ALJ

The ALJ conducted a hearing with Plaintiff, Plaintiff's attorney, Plaintiff's husband, and a vocational expert, Dr. Darrell Taylor, on November 18, 2016 (Tr. 53). Plaintiff testified she was born in 1968, has some college education, and receives disability payments from the Department of Veterans Affairs (Tr. 62). Plaintiff's last employment ended in May 2014 (Tr. 63-64). From 2001 until May 2014, Plaintiff worked for the Jefferson County Health Department as a clerical supervisor and assistant branch manager (Tr. 63-64). Plaintiff's job required her to travel by car between two offices, and alternate between standing and sitting, doing each about half of the work day (Tr. 66-67).

Plaintiff testified she is unable to work because she is exhausted, cannot determine how she is going to feel on any given day, and therefore is an unreliable employee (Tr. 68). Plaintiff's pain is "always at a five," but can, at times, be as severe as "between an eight and a nine" on a

ten-point scale (Tr. 68-69). Plaintiff has experienced pain in her lower back starting around 2008 (Tr. 69). She attempted to manage this lower back pain with interventional pain relief in 2009, visits to physical therapists, and narcotics (Tr. 69). In addition to experiencing pain and exhaustion, Plaintiff testified it is hard for her to stay focused (Tr. 72-73). Plaintiff stated she suffers from memory problems and an inability to concentrate as a result of her medication (Tr. 73). Plaintiff claims her pain makes it difficult to sleep (Tr. 74). When she wakes in the morning, her body is numb and tingling all over which causes a disorienting feeling which lasts for about a half hour or longer (Tr. 74). She also states she suffers from daily headaches which require her to rest her head (Tr. 74-75).

Plaintiff lives with her husband in a three-level duplex (Tr. 76). When she attempts to walk up the 17 stairs to the second floor, Plaintiff testified she gets winded, and has muscle spasms after about the fifth step, which requires her to stop (Tr. 76). Plaintiff avers she has extreme lower back pain when she attempts to bend over which makes it difficult for her to get back up (Tr. 77-78). She also testified she had carpal tunnel surgery on her left hand, and wears a brace on her right hand, but has not gotten surgery on her right hand because of the pain and difficulty she had following surgery on her left hand (Tr. 78). In 2015, Plaintiff took a high dose of steroids for her pain which improved her condition, but when she was placed on a lower dosage, they were ineffective (Tr. 87).

Since 2008, Plaintiff testified she has difficulty completing household chores because of exhaustion and pain (Tr. 80). Plaintiff's son currently lives with her and her husband and helps with day-to-day cleaning, cooking, and grocery shopping (Tr. 80). In addition to outside activities, Plaintiff's hobbies include visiting Six Flags and target shooting (Tr. 83-84).

Plaintiff's husband, Scott Horwitz, testified he did not believe Plaintiff could work any job on a full-time sustained basis (Tr. 89).  Mr. Hortwitz stated before approximately 2009, Plaintiff was able to go to the zoo, take their dogs for walks, cook dinner, and go up and down the stairs without issue (Tr. 91). He also testified Plaintiff just "doesn't have the stamina" to do the things she used to do around the house, or for fun (Tr. 92-93).

The vocational expert, Dr. Darrell Taylor, testified Plaintiff's past work includes work as a classification clerk, and public health registrar (Tr. 95). Dr. Taylor testified Plaintiff is not able to perform any of her past work; however, she was able to do sedentary, unskilled work including as a hand packer, worker assembler, and surveillance system monitor (Tr. 96-97).

## III.     MEDICAL EVIDENCE AND OTHER EVIDENCE BEFORE THE ALJ

Plaintiff completed a Function Report summarizing her daily activities as follows: Plaintiff reported she was unable to sit or stand for extended periods.  She claimed problems lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, and using her hands.  She also stated she suffered from excessive fatigue which was exacerbated by her medications.  She claimed her fatigue affected her ability to concentrate.  She reported neck issues which affected her ability to hold her head up without rest due to headaches.  She stated she had switched from showers to baths and had problems fixing her hair due to her arms.  (Tr. 232-242).

Plaintiff reported she cooks, does laundry, sweeps, mops, and dusts.  She stated she shops for groceries weekly.  Her hobbies are reading, watching television and listening to music.  She reported she spends time with her family, goes to church, and has dinner with friends.  She reported she was able to walk for two blocks before she needed to stop. She reported she takes

her dogs outside numerous times per day. She stated she could follow written and spoken instructions.

The medical evidence of record reflects the following: On April 18, 2013, an MRI of Plaintiff's cervical spine showed moderate to severe disc degeneration from C5 - C7, along with moderate sized central disc herniation with moderate central stenosis at C5 - 6 and moderate to severe left neuroforaminal stenosis with moderate central stenosis at C6 - 7 (Tr. 727). No obvious fracture, deformity, or instability was noted (Tr. 727). Treatment records on April 25, 2013, indicate Plaintiff, after discussing the results of her MRI, wished to pursue a conservative treatment plan and a left C-7 selective nerve root block was ordered (Tr. 727). On June 16, 2013, Plaintiff saw Nurse Practitioner Connie Pickering, who noted Plaintiff's C-7 nerve root injections "helped 50% and [were] still giving her some relief." (Tr. 729.)

On November 25, 2013, Plaintiff saw her primary care physician (PCP) and was evaluated for fibromyalgia she had been diagnosed with in 2012 (Tr. 475, 733). Plaintiff described the intensity of her tender points (spine, shoulders, hips, knees, and elbows) as moderate (Tr. 733). Other treatment notes for various 2013 examinations by her PCP recorded tenderness in Plaintiff's left trapezius, decreased range of motion in her neck, intermittent, moderate upper back pain, and fatigue (Tr. 734-752).

On June 2, 2014, Plaintiff had a consultation with a neurosurgeon for neck pain radiating to her shoulders (Tr. 430). The treatment notes reflect that: her cervical spine was not rigid and had a normal range of movement; her thoracic spine and lumbar spine were not tender or deformed; she had full strength and good coordination; and there was no need of immediate surgery (Tr. 430-31). On June 24, 2014, an MRI of Plaintiff's cervical spine revealed mild reversed curvature of the cervical spine centered at C4 - C5, degenerative disc disease at C5 - C6

and C6 - C7 (most severe at C5 - C6), multilevel disc osteophyte complex and facet joint osteoarthropathy resulting in narrowing of the spinal canal and neuroforamina (Tr. 403-04).

On November 3, 2014, Plaintiff's PCP indicated Plaintiff had tenderness in her left trapezius, decreased range of motion in her neck, and bilateral posterior superior iliac spine pain (Tr. 780-82).  On November 14, 2014, Plaintiff was seen for fibromyalgia and the record indicated she had no gait abnormality, no pain on palpation, no crepitus, her neck was supple, and her range of motion was normal (Tr. 477).

On November 20, 2014, based upon an examination of Plaintiff, a neck (cervical spine) disability questionnaire was completed (Tr. 460-472; 821-832).  The questionnaire indicated: Plaintiff had reduced right and left lateral flexion and rotation with pain on movement; she had 4/5 strength in her elbows; she did not have an abnormal gait; her sensory exam was normal; and she had moderate numbness and paresthesias in her upper extremities.  *Id.*  On the same date, a fibromyalgia disability benefits questionnaire was completed (Tr. 814-820).  The questionnaire states Plaintiff indicated she had not obtained pain relief with medication and suffered from widespread musculoskeletal pain, stiffness and muscle weakness (Tr. 815-16).  The questionnaire listed Plaintiff's positive trigger points.

Plaintiff had a rheumatology consultation on March 20, 2015.  The treatment notes indicate that while Plaintiff had multiple tender points consistent with fibromyalgia, she had no synovitis[2] on examination (Tr. 805).  A follow-up appointment on September 25, 2015, recorded the same conditions in the treatment notes.  (Tr. 811-12).  Treatment notes by Plaintiff's PCP on February 3, 2015, June 2, 2015, and October 20, 2015, indicated: Plaintiff had chronic back pain

---

[2] Synovitis is an inflammatory condition of a synovial membrane usually with pain and swelling of the joint.  Merriam Webster Medical Dictionary, https://www.merriam-webster.com/dictionary/synovitis#medicalDictionary (last visited September 12, 2019).

without radiculopathy[3] and no changes in severity; her neck had decreased range of motion, and she had tenderness in her left trapezius (Tr. 878, 880, 881,883, 884).

On November 10, 2015, Plaintiff had an appointment with Dr. Anthony J. Margherita, M.D., at West County Spine and Sports Medicine. Treatment notes from this visit indicate Plaintiff had a favorable response (60 percent improvement) to a course of steroids with markedly decreased pain and stiffness in her thighs, hips, lower back and trunk (Tr. 579). A December 3, 2015 follow-up appointment noted Plaintiff had six physical therapy sessions with an improvement in range and strength, but persistent fibromyalgia symptoms (Tr. 577). This visit also reflected Plaintiff had normal range of motion in her neck and no trapezius or vertebral spine tenderness (Tr. 577). A January 7, 2016 follow-up for post oral steroid and physical therapy indicated Plaintiff had tenderness in her neck, but otherwise her neck was normal with normal range of motion (Tr. 575). Dr. Margherita ordered an MRI of Plaintiff's lumbar spine, which showed small disc protrusions at T11-12 and L3-4, mild left foraminal narrowing at L4-5, mild facet arthropathy in the lower lumbar spine, and no significant central canal stenosis (Tr. 600).

On February 10, 2016, an EMG/nerve conduction study showed a neuropathic problem at or proximal to the intervertebral foramen at the S1 level, matching the clinical impression of a radiculopathy involving the right S1 nerve root (Tr. 596). The report also showed normal nerve conduction velocity studies in the distal lower limbs (Tr. 596). Plaintiff returned to Dr. Margherita on March 31, 2016, and treatment notes reflect she had a poor response to a back brace she wore for two weeks, her range of motion in her neck was limited in extension, her

---

[3] Radiculopathy is the irritation of or injury to a nerve root (as from being compressed) that typically causes pain, numbness, or weakness in the part of the body which is supplied with nerves from that root. Merriam Webster Medical Dictionary, https://www.merriam-webster.com/dictionary/radiculopathy (last visited September 12, 2019).

range of motion in her shoulder joint was normal, her motor strength was normal, and there was no vertebral spine or paraspinal tenderness (Tr. 959).

Plaintiff was seen by her PCP on April 27, 2016. Treatment notes indicate Plaintiff had tenderness in multiple trigger points in her trapezius, deltoid, hips, knees and ankles (Tr. 875). The notes also stated Plaintiff had decreased range of motion in her neck (Tr. 875). On May 9, 2016, Plaintiff was treated by Dr. Ramis Gheith, M.D., at the Interventional Pain Institute. At this visit, Plaintiff reported worsening pain in her lower back (Tr. 875). At this visit, Dr. Geith noted Plaintiff had severe tenderness "over the lumbar vertebral regions and paraspinal muscles and facets L3-/L4 thru L5/S1 worse with extension and lateral bending." (Tr. 875.) Although Plaintiff had a reduced range of motion and atrophy of her lumbar paraspinal muscles, her straight leg raise testing was negative bilaterally. *Id.* Similar findings were recorded on a subsequent visit with Dr. Gheith on May 27, 2016 (Tr. 1008). The treatment notes from this visit indicate Plaintiff was being seen for a lumbar discography (Tr. 1009). The discography showed minimal diffuse disc bulging at L3-4, L4-5, L5-S1, and L2-3 (Tr. 964).

Plaintiff had a follow-up appointment with Dr. Margherita on June 2, 2016 (Tr. 957-58). Plaintiff exhibited a normal gait pattern, no vertebral or paraspinal tenderness, and normal bilateral lower extremities (Tr. 957). On July 11, 2016, Plaintiff returned to Dr. Geith, who noted Plaintiff had severe tenderness to palpation over the lumbar vertebral regions and paraspinal muscles and facets at L3 - 4 through L5 - S1 (Tr. 1005). Plaintiff was positive for atrophy of the lumbar paraspinal muscles with noted weakness with poor posture and poor spinal alignment (Tr. 1005). Plaintiff ambulated without difficulty, her upper and lower extremities were noted to have normal strength and tone proximally and distally, and her straight leg raise was negative bilaterally (Tr. 1005). Plaintiff indicated she was considering spinal surgery in

Arizona (Tr. 1006).   On August 25, 2016, Plaintiff saw her PCP, who noted Plaintiff had lower

back tenderness and decreased range of motion in her neck (Tr. 1019-20).

## IV.    DECISION OF THE ALJ

The ALJ determined Plaintiff met the insured status requirements of the Social Security

Act through December 31, 2019, and that Plaintiff had not engaged in any substantial gainful

activity since May 7, 2014, the alleged onset date of her disability (Tr. 21).  The ALJ stated

Plaintiff has the severe impairments of cervical disc herniation, stenosis[4] and radiculopathy,

minimal diffuse disc bulging in the lumbar spine, fibromyalgia[5], and obesity (Tr. 21). The ALJ

also determined Plaintiff did not have a history of right carpal tunnel syndrome release, carpal

tunnel syndrome in the left upper extremity, or a mental impairment (Tr. 21). The ALJ found no

impairment or combination of impairments which meets or medically equals the severity of one

of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 21).

After considering the entire record, including Plaintiff's testimony, the ALJ determined

Plaintiff had the Residual Functioning Capacity ("RFC") to perform sedentary work and could

never climb ladders, ropes or scaffolds (Tr. 22). The ALJ stated Plaintiff could occasional climb

ramps or stairs, could occasionally balance, stoop, kneel, crouch, and crawl, could never be

exposed to excessive vibration, unprotected heights, or hazardous machinery, and was limited to

simple, routine tasks (Tr. 22).

The ALJ found Plaintiff was unable to perform any past relevant work (Tr. 26).

Plaintiff's past relevant work included work as a classification clerk and public health registrar

---

[4] Stenosis a narrowing or constriction of the diameter of a bodily passage or orifice. Merriam
Webster Medical Dictionary, https://www.merriam-webster.com/dictionary/stenosis (last visited
September 12, 2019).
[5] Fibromyalgia is a common syndrome of chronic widespread soft-tissue pain accompanied by
weakness, fatigue, and sleep disturbances; the cause is unknown. Stedmans Medical Dictionary
331870 (2014).

(Tr. 95). The ALJ also found there are jobs which exist in significant numbers in the national economy Plaintiff could perform, including as a hand packer, production assembly worker, and surveillance system monitor (Tr. 26-27). Thus, the ALJ determined Plaintiff was "not disabled" (Tr. 27).

## V. LEGAL STANDARD

Under the Social Security Act, the Commissioner must follow a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, first the claimant cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two, only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of these impairments, then the claimant is *per se* disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past to determine if the claimant can perform any past relevant work. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy which can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3.

"The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed, if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record *de novo*. *Cox*, 495 F.3d at 617. Instead, the district court must simply determine whether the quantity and quality of evidence is enough, so a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision, which is supported by substantial evidence, is not subject to reversal, merely because substantial evidence may also support an opposite conclusion, or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

## VI. DISCUSSION

On appeal, Plaintiff argues 1) the ALJ's determination of Plaintiff's RFC is not supported by any medical opinion; 2) the ALJ erred by not addressing lay evidence from Plaintiff's former

supervisor; 3) the ALJ erred in evaluating Plaintiff's subjective claims of pain; and 4) the ALJ erred in accounting for Plaintiff's fatigue and fibromyalgia.

### a. The ALJ erred in determining Plaintiff's RFC

Plaintiff first argues the ALJ's determination of Plaintiff's RFC is not properly supported by any medical opinion and further evaluation and review by a medical expert is required on remand. In his Decision, the ALJ concluded Plaintiff had the RFC to perform sedentary work, could never climb ladders, ropes or scaffolds, could occasionally climb ramps or stairs, and could occasionally balance, stoop, kneel, crouch, and crawl (Tr. 22). The ALJ further opined Plaintiff could never be exposed to excessive vibration, unprotected heights, or hazardous machinery, and is limited to simple, routine tasks (Tr. 22).

A Plaintiff's RFC is what she can do despite her limitations. *See* 20 C.F.R. § 404.1545. "Residual functional capacity is an assessment of an individual's ability to perform sustained work-related physical activities in a work setting for eight hours a day, five days a week, or the equivalent work schedule." *Ross v. Apfel*, 218 F.3d 844, 849 (8th Cir. 2000) *citing* Social Security Ruling 96–8p. When determining Plaintiff's RFC, the ALJ evaluates the record as a whole, including Plaintiff's own testimony regarding his symptoms and limitations, the Plaintiff's medical records, and any medical opinion evidence. *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010). A Plaintiff's RFC is a medical question where "some" medical evidence must support the ALJ's RFC determination. *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) *citing Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995).

In the present case, Plaintiff's RFC was based on the ALJ's finding of the severe impairments of cervical disc herniation, stenosis and radiculopathy, minimal diffuse disc bulging in the lumbar spine, fibromyalgia, and obesity (Tr. 21). The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but Plaintiff's statements of intensity, persistence, and limiting effects of these symptoms were not consistent with the evidence in the record (Tr. 23).

Plaintiff contends the ALJ must have a medical source statement from a medical consultant which exactly mirrors the ALJ's determination of Plaintiff's exertional level in her RFC. Plaintiff points out that the State agency medical consultant, Dr. Kenneth Smith, opined Plaintiff was only able to perform light work (Tr. 102-108), but the ALJ rejected his opinion and determined Plaintiff could do a lower level of work, sedentary work. Plaintiff argues the ALJ needed a medical source statement to confirm his finding of sedentary work.

As noted above, Plaintiff's RFC is a medical question where "some" medical evidence must support the ALJ's RFC determination. *Lauer*, 245 F.3d at 704. There is no requirement that an RFC finding be supported by a specific medical opinion. *See Hensley v. Colvin*, No. 15-2829, 2016 WL 3878219, at *3 (8th Cir. July 18, 2016). In the present case, the ALJ relied upon more than "some" medical evidence to determine Plaintiff had more severe limitations than the medical opinion of Dr. Smith that Plaintiff could perform light work. The ALJ explained Dr. Smith's opinion was entitled to little weight as it was inconsistent with Plaintiff' spinal pathology, fibromyalgia and obesity. Treatment notes repeatedly reflect tenderness in multiple trigger points, decreased range of motion in Plaintiff's back, and her chronic back pain. The ALJ further considered evidence added to the record after Dr. Smith's January 6, 2015 opinion was

rendered.[6] This additional evidence included reports of severe disc degeneration, radiculopathy, disc bulging and positive fibromyalgia trigger points. Moreover, the ALJ considered Plaintiff's testimony as to her extreme lower back pain, excessive fatigue and neck issues.

Thus, the ALJ properly relied upon the medical record as a whole, including the testimony of Plaintiff, to determine she was only capable of doing sedentary work, and not light work as opined by Dr. Smith. Accordingly, substantial evidence supports the ALJ's determination of Plaintiff's RFC limiting her to sedentary work.

### b. The ALJ erred by not addressing the Work Activity Questionnaire

Plaintiff argues the ALJ erred as he failed to specifically discuss medical evidence submitted from Plaintiff's former supervisor, Stephen Buck, when drafting his Decision.

On December 12, 2014, Stephen Buck, Plaintiff's clerical supervisor at the Jefferson County Health Department, completed a Work Activity Questionnaire which indicated Plaintiff was unable to complete her usual duties, required special assistance to complete her duties, did not regularly report for work, and required more breaks/rest periods, frequent absences, and special equipment to complete her job (Tr. 161-135).

After evaluating the entire medical record, the ALJ ultimately made a determination Plaintiff was unable to perform any of her past work, including her work at the Jefferson County Health Department for Mr. Buck (Tr. 26). The ALJ stated in his opinion Plaintiff "retains the residual functional capacity for a range of sedentary and simple work, and her past relevant work

_____

[6] Plaintiff argues that because Dr. Smith's did not consider the additional evidence of record in formulating his opinion, her case must be re-evaluated by a medical consultant. The Court disagrees. A medical expert's opinion need not address the entirety of the record. Instead, the opinion becomes a part of the record that the ALJ must consider and weigh – along with all the other evidence of record – when determining disability. *See Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007).

was at a heavier exertional level or greater skill level or involved nonexertional demands precluded by the residual functioning capacity" (Tr. 26).

An arguable deficiency in opinion-writing technique is not a sufficient reason for setting aside an administrative finding where, as here, the deficiency probably had no practical effect on the outcome of the case. *Benskin v. Bowen*, 830 F.2d 878, 883 (8th Cir. 1987). In the present case, the ALJ did not expressly address Mr. Buck's Work Activity Questionnaire in his decision. However, the limitations indicated on Mr. Buck's form are consistent with the other evidence cited by the ALJ to support the conclusion Plaintiff is only able to do sedentary work. *See Buckner v. Astrue*, 646 F.3d 549, 559-560 (8th Cir. 2011). The ALJ determined Plaintiff had limitations on her ability to work, including limitations implied by Mr. Buck's check-box questionnaire, and appropriately outlined those in his RFC determination of Plaintiff.

It is evident from the record and from the ALJ's opinion, the ALJ's arguable deficiency by failing to specifically address Mr. Buck's statement had no bearing on the outcome of the ALJ's determinations, and therefore, the ALJ's determination of Plaintiff's RFC is supported by substantial evidence.

### c. The ALJ erred in evaluating Plaintiff's subjective complaints.

Plaintiff argues the ALJ failed to properly consider Plaintiff's subjective complaints of pain and limitations. Specifically, Plaintiff contends the ALJ erred in concluding Plaintiff's allegations of pain and limitations were not entirely consistent with the medical and other evidence of record.

For purposes of social security analysis, a "symptom" is an individual's own description or statement of her physical or mental impairment(s). SSR 16-3p, 2017 WL 5180304, at *2 (Soc.

Sec. Admin. Oct. 25, 2017) (republished).[7] If a claimant makes statements about the intensity, persistence, and limiting effects of her symptoms, the ALJ must determine whether the statements are consistent with the medical and other evidence of record. *Id*. at *8.

When evaluating a claimant's subjective statements about symptoms, the ALJ must consider all evidence relating thereto, including the claimant's prior work record and third-party observations as to her daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions. *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted). If the ALJ finds the statements to be inconsistent with the evidence of record, he must make an express determination and detail specific reasons for the weight given the claimant's testimony. SSR 16-3p, 2017 WL 5180304, at *10; *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012); *Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991).

Here, after finding at Step 3 of the sequential analysis that Plaintiff's impairments did not meet the criteria for listing level disability, the ALJ considered and discussed Plaintiff's testimony and allegations. The ALJ concluded Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical and other evidence of record. The ALJ proceeded to detail the medical evidence of record, noting findings that supported Plaintiff's severe impairments as well as evidence that was inconsistent with the presence of disabling limitations. (Tr. 23-25).

---

[7] The Social Security Administration issued a new ruling that eliminates the use of the term "credibility" when evaluating a claimant's subjective statements of symptoms, clarifying that "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2017 WL 5180304, at *2 (Soc. Sec. Admin. Oct. 25, 2017) (republished). The factors to be considered in evaluating a claimant's statements, however, remain the same. *See id.* at *13 ("Our regulations on evaluating symptoms are unchanged."). *See also* 20 C.F.R. §§ 404.1529, 416.929. This new ruling applies to final decisions of the Commissioner made on or after March 28, 2016.

In support of Plaintiff's severe impairments, the ALJ noted the results of Plaintiff's MRIs from 2013 to 2016, detailing Plaintiff's spinal impairments from her lower level spine up through her cervical spine (Tr. 23-25). The ALJ addressed Plaintiff's diagnosis of fibromyalgia and the limitations resulting from her fibromyalgia (Tr. 23-25). However, the ALJ also noted evidence of record that was inconsistent with *disabling* limitations.  For example, a June 2, 2014 neurosurgery consultative examination indicated Plaintiff had no tenderness in the thoracic and lumbar spine, and normal range of movement in the cervical spine, as well as full strength and good coordination (Tr. 23, 421-22).  On November 14, 2014, Plaintiff had no gait abnormality, no pain on palpation, no crepitus, and normal range of motion (Tr. 24, 477). A November 20, 2014 cervical disability benefits questionnaire indicated reduced right and left lateral flexion and rotation with pain on movement, but also noted 4/5 strength in the elbows, 5/5 strength in the wrists and fingers, no muscle atrophy, no abnormal gait, and normal sensory examination (Tr. 24, 462-72). Plaintiff did not have any numbness, tingling, or swelling during a March 20, 2015 rheumatology consultation (Tr. 24, 804). A January 2016 MRI of the lumbar spine showed only mild abnormalities and small disc protrusions with no significant central canal stenosis (Tr. 24, 600-01).  In May 2016, Plaintiff reported worsening back pain and had severe tenderness to palpation at L3-4 and L5-S1, but straight leg raising was negative, she ambulated without difficulty, and muscle strength was normal in the upper and lower extremities (Tr. 24-25,1007-12). An CT scan of the lumbar spine later that month showed minimal diffuse disc bulging at several levels (Tr. 25, 963-64). A June 2, 2016 examination showed normal gait, no vertebral spine tenderness, and normal bilateral lower extremities (Tr. 25, 957).

The ALJ further discussed evidence that Plaintiff showed significant improvement with pain medication, oral steroids, and physical therapy (Tr. 24-26). Plaintiff contests the

significance of this treatment and instead argues conservative treatment failed and surgery was scheduled. The record, however, only indicates Plaintiff was "considering spinal surgery in Arizona" (Tr. 1005). Furthermore, the ALJ cited other evidence that showed improvement of Plaintiff's symptoms, including a November 10, 2015 record indicating a 60 percent improvement after taking an oral steroid, with decreased pain and stiffness in the thighs, hips, low back, and trunk (Tr. 24, 579). A follow up after physical therapy dated December 3, 2015, indicated Plaintiff had improvements in range and strength following six therapy sessions but continued to have fibromyalgia-related symptoms (Tr. 24, 577). While Plaintiff had tenderness in her back at that time, she had normal range of motion and normal motor strength and gait (Tr. 24, 577). A post-oral steroid and physical therapy examination on January 7, 2016, indicated Plaintiff had tenderness in her neck but her neck was normal otherwise with normal range of motion and normal motor strength (Tr. 24, 575).

After addressing Plaintiff's subjective symptoms and detailing specific medical evidence, the ALJ stated,

> In terms of the claimant's alleged symptoms related to her impairments, it is reasonable she would have some symptoms, but not of the severity alleged. She alleged significant symptoms related to her impairments, but the record showed a good response to conservative treatment that has included pain medication, oral steroids, and physical therapy. . . The undersigned considered the claimant's subjective complaints in the established residual functional capacity, and based on evidence of tenderness in the cervical and lumbar spine, reduced range of motion in the cervical and lumbar spine, radiculopathy, positive fibromyalgia tender points, and obesity the claimant has been limited to a reduced range of sedentary work. . . Furthermore, the undersigned limited the claimant to the performance of only simple, routine tasks secondary to her reports of fatigue due to fibromyalgia and her medication.

Tr. 25.

Here, the ALJ set forth six paragraphs of his Decision detailing Plaintiff's medical records going back to 2013. Only after detailing those records, did the ALJ conclude Plaintiff's

subjective complaints were not of the severity she alleged. This is a proper analysis of Plaintiff's subjective complaints and, accordingly, the ALJ provided good reasons for discrediting Plaintiff's testimony. Because this determination is supported by good reasons and substantial evidence, the Court must defer to it, *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016), even if it could have reached a different conclusion. *Girshner v. Berryhill*, No. 4:16-CV-03451-NKL, 2017 WL 2859930, at *8 (W.D. Mo. July 5, 2017).

### d. The ALJ erred in accounting for Plaintiff's fatigue and fibromyalgia.

Finally, Plaintiff argues the ALJ erred in accounting for her fatigue and fibromyalgia she claims prevented her from being able to complete a full work-day. Specifically, Plaintiff contends the ALJ inadequately accounted for these conditions as he limited her to simple, routine tasks, but imposed no further limitations.

SSR 96-8p states the ALJ must consider "all work-related limitations and restrictions that do not depend on an individual's physical strength… [The RFC] assesses an individual's abilities to perform physical activities such as postural…manipulative…visual…communicative…and mental." (SSR 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims). The Ruling also states an RFC must assess Plaintiff's work-related abilities on a function-by-function basis. *Id.*

As discussed in detail in the previous section, the ALJ properly evaluated the consistency of Plaintiff's alleged symptoms and limitations due to all her alleged medical conditions, including fatigue and fibromyalgia (Tr. 23-26).  After an evaluation of the entire medical record, the ALJ concluded Plaintiff's ability to work was limited "to the performance of only simple, routine tasks secondary to her reports of fatigue due to fibromyalgia" (Tr. 26).  Moreover, the ALJ determined Plaintiff had postural and environmental limitations.  Specifically, the ALJ

stated Plaintiff can never climb ladders, ropes or scaffolds, can occasional climb ramps or stairs, can occasionally balance, stoop, kneel, crouch, and crawl, and can never be exposed to excessive vibration, unprotected heights, or hazardous machinery (Tr. 22).

The limitations set forth by the ALJ were appropriately considered and explained based on the entire medical record. The RFC properly assessed Plaintiff's work-related abilities on a function-by-function basis. Plaintiff's allegations of disabling limitations from her fibromyalgia, such as an inability to complete a full workday, are not entirely consistent with the record, which reflected Plaintiff's normal muscle strength and improvements with pain medications, oral steroids and therapy. Although a claimant's subjective complaints cannot be disregarded solely because they are not fully supported by objective medical evidence, they may be discounted if there are inconsistencies in the record as a whole. *See Buckner v. Astrue*, 646 F.3d 549, 558(8th Cir. 2011).

## VII.   CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** the decision of the Commissioner is **AFFIRMED**, and  Plaintiff's Complaint is **DISMISSED with prejudice**.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 12th day of September, 2019.

**E. RICHARD WEBBER**
**SENIOR UNITED STATES DISTRICT JUDGE**